PRICE et al. v. TRADERS' NAT. BANK et al.
(No. 689.)

(Court of Civil Appeals of Texas. El Paso. April 19, 1917. On Rehearing, June 14, 1917.)

1. MORTGAGES ⬦⟠91—REGISTRATION—INSTRUMENTS ENTITLED TO.

A deed reserving a vendor's lien and a purchase-money note reciting that it was secured by such lien are entitled to registration under Rev. St. 1911, art. 6823, providing that mortgages, etc., may be recorded.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 201, 202.]

2. JUDGMENT ⬦⟠785(2)—PRIORITY OVER ASSIGNED VENDOR'S LIEN.

Where a deed reserving a vendor's lien for payment of the purchase-money note was recorded, and such lien assigned by an unrecorded instrument, the original deed was notice of the lien to the vendor's creditors only until the purchase-money note was outlawed, and the liens of judgments against the vendor secured after the note was barred by limitations are superior to the assignee's rights under the vendor's lien.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1359.]

3. APPEAL AND ERROR ⬦⟠879—WHO MAY ALLEGE FUNDAMENTAL ERROR.

Court of Civil Appeals will not consider a suggestion of fundamental error made by a party not appealing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3581–3583.]

Appeal from District Court, Tarrant County; R. Bruce Young, Judge.

Action by the Traders' National Bank against Mrs. Anna H. Price, T. P. Day and wife, and others. Judgment for plaintiff, and the named defendants appeal. Reversed and rendered.

W. J. Berne, E. H. Ratcliff, and Lee, Lomax & Smith, all of Ft. Worth, for appellants.

W. R. Sawyers, Carlock & Carlock, and A. C. Heath, all of Ft. Worth, and R. E. Thomason, of El Paso, for appellees.

WALTHALL, J. Appellee Traders' National Bank of Ft. Worth, Tex., brought this suit against B. J. Houston and his wife, Mrs. Laura Houston, R. P. Waltz, J. F. Weadington, T. P. Day and wife, E. M. Day, Mrs. Anna Price, a feme sole, and others not necessary to mention, as the judgment sufficiently and properly disposes of them and the issues presented as to them, and they are not parties to this appeal. The suit was based upon a note executed by R. P. Waltz to B. J. Houston secured by a vendor's lien on 57 acres of land near the city of Ft. Worth described in the petition, judgment being asked for the amount of the note, interest and attorney's fees, and foreclosure of the lien on the land. B. J. Houston was made a party as indorser and guarantor of the note under a transfer of the note to the bank and under extension agreements, and Weadington was made a party defendant as guarantor of the note at a date subsequent to its execution, and the other defendants as claiming an interest in the land. All of the defendants disclaimed interest in the land except Day and wife and Mrs. Anna H. Price. The trial by a jury resulted in a judgment for the bank, and T. P. Day and wife and Mrs. Anna H. Price have appealed. The appellants have practically the same issues and present them together. Weadington is not a party to the appeal and filed no cross-action or assignment, but filed a brief suggesting fundamental error in rendering judgment against him on the ground that there is no plead to support the judgment.

The undisputed facts shown on the trial and the facts found by the jury, so far as necessary to an understanding of the points involved, are these:

### Statement of Facts.

(1) On June 20, 1907, defendant B. J. Houston was the owner under a duly recorded deed of 57 acres of land situated near the city of Ft. Worth, in the county of Tarrant, describing the same by metes and bounds, the same land involved in this suit and referred to as 57 acres of land. On August 2, 1907, said Houston, for a valuable consideration, duly transferred and conveyed by general warranty deed to defendant R. P. Waltz the said land for the recited consideration of $12,000, of which amount the said deed recited that $6,000 was paid in cash upon delivery of the deed, and that Waltz had executed on said date to B. J. Houston his note for the principal sum of $6,000, bearing 8 per cent. interest per annum from date, and due 12 months after date, and secured by a vendor's lien upon said land, expressly reserved in said deed. The said note also provided for attorney's fees.

(2) As a part consideration for said deed, Waltz at the same time executed to B. J. Houston his note for the principal sum of $6,000, of date June 20, 1907, due 12 months after date, and made payable to the order of B. J. Houston, and bearing interest at the rate of 8 per cent. per annum, and providing that all past-due interest should bear a like rate of interest, and providing for attorney's fees. In the note it is provided that same is secured by a vendor's lien against said 57 acres of land.

(3) Before maturity of the said note Houston, for a valuable consideration paid to him by appellee Traders' National Bank in due course of trade, sold, indorsed, and delivered said note to appellee bank, and guaranteed its payment, and executed to appellee bank a formal assignment and transfer of the superior vendor's lien retained by said Houston in the deed from Waltz to secure the payment of said note, the sale and indorsement of the note and the assignment being sufficient to vest in appellee bank the full legal title and ownership of said note and the vendor's lien against said land securing same.

(4) The appellee bank acquired the said note in course of trade, in good faith, and before maturity, and without any knowledge at the time that the original transaction between Houston and Waltz, out of which the said note grew, was not a genuine transaction.

(5) The deed from Houston to Waltz was filed for record in Tarrant county on August 2, 1907, and was duly recorded in the deed records of said county on August 27, 1907.

(6) The assignment and transfer of the vendor's lien from Houston to the appellee bank was never filed or placed of record.

(7) Waltz did not in fact purchase said land from Houston and did not pay Houston the $6,000 cash consideration mentioned in the deed, or any part of it.

(8) The Houston-Waltz deed was as between Houston and Waltz a matter of form, the purpose not being made clear by the record, except to enable him to borrow money on the note.

(9) When the bank purchased the note of Houston, it knew nothing of the inwardness of the Houston-Waltz transaction except as stated in the deed from Houston to Waltz and as shown in the note, but believed that the transaction between them was what it purported to be on the face of the instruments.

(10) After Houston transferred the note and lien to the bank, and before the note matured, the maturity being June 20, 1908, Waltz reconveyed the land to Houston, and Houston thereupon informed the bank of such fact and stated to the bank that said reconveyance was made upon his (Houston's) agreement to pay said $6,000 note. This reconveyance deed was never recorded.

(11) From the time the bank received the information of the reconveyance of the lands from Waltz to Houston the bank did not look to Waltz for payment of the note, but did look solely to Houston and the lien on the land expressed and retained in original deed from Houston to Waltz and expressed in the note.

(12) From June 20, 1908, the maturity of the note, the payment of the note was from time to time extended by agreement between Houston and the bank written on the back of the note, until such time as the record showed the note to be barred by the statute of limitation of four years. None of the extensions of the note were recorded.

(13) W. R. Edrington was cashier of the bank at the time the bank purchased the note and represented the bank in its purchase and in all subsequent transactions between the bank and Houston having reference to the note.

(14) In the spring of 1908 appellant Mrs. Price delivered certain money to Houston to be loaned for her upon proper security, and in the early part of 1909 Mrs. Price delivered to Houston further sums for the same purpose, these sums aggregating about $8,000. Houston did not loan this money, but embezzled it.

(15) In the early part of 1913, and at intervals for a short time thereafter, the Days delivered to Houston money to be loaned by him for them upon proper security, the money so advanced aggregating about $3,000. Houston did not loan this money, but embezzled it.

(15a) About February, 1914, Houston fled the country, and about that time was indicted for embezzlement. At the time of the trial of this case he could not be found.

(16) February 26, 1914, the Days brought this suit in the district court of Tarrant county to recover against Houston the $3,000, and on same day sued out and had levied a writ of attachment on the 57 acres as the property of Houston.

(17) On March 10, 1914, Mrs. Price brought suit in the district court of Tarrant county against Houston to recover the $8,000, and on the same day sued out and had levied a writ of attachment on said 57 acres as the property of Houston.

(18) On October 6, 1914, and on October 26, 1914, Mrs. Price and the Days each respectively recovered judgments for the amounts sued for with foreclosures of the attachment liens on said 57 acres of land.

(19) On October, 1915, sales day, the 57 acres of land were sold under proper order of sale in the Price v. Houston case to Mrs. Price, she paying the cost and crediting the balance of her bid on her judgment.

(20) On December, 7, 1915, under proper order of sale in the case of Day v. Houston, the 57 acres of land was sold to the Days. their bid being $25, which amount was credited on the judgment, they paying, in addition, the cost of the sheriff's sale and cost of the suit.

(21) In this suit the Days and Mrs. Price

filed cross-action against the bank in trespass to try title to recover the 57 acres free of its lien.

(22) The plaintiffs in the attachment suits at the time of the levies of the attachment writs had no actual notice or knowledge of the bank's lien and no constructive notice other than the notice given by the record of the deed from Houston to Waltz and the stated retention therein of the lien to secure the payment of the note in question.

Appellants' first four assignments of error are directed to the refusal of the court to charge the jury to find for Mrs. Price and the Days. They assert several propositions, but under the above statement of facts we think all may be embraced in the proposition that under our registration statutes the transfer of the vendor's lien from Houston to the bank was capable of registration, and its registration was authorized, and that, to be binding on subsequent creditors and purchasers, it was required to be recorded, and that, failing to record the transfer of the lien, they being creditors without notice, the transfer is void as to them. The contention of the appellee bank substantially is that the registration of the deed from Houston to Waltz setting forth by appropriate description therein the execution and delivery of the $6,000 negotiable note from Waltz to Houston as a part of the purchase money of said land, due 12 months after date, and secured by an express vendor's lien upon the land described in said deed, was constructive notice of the existence of said note, of the retention of the lien securing the same against the said land, and of the negotiability of said note, which would as a legal consequence in case of negotiation or assignment of said note, in the absence of any release of said lien, of record or otherwise, carry with it the vendor's lien attaching thereto. That, while it was permissible for the bank to have filed for record the formal transfer of said note and lien executed to it by Houston, the only penalty or injurious consequence that could in law result to the bank from its failure to record said instrument was that it left it in the power of Houston to have fraudulently executed a release of said lien and to have placed same of record, and in which event any subsequent innocent purchaser or creditor, dealing with the said property, would acquire superior rights to those of the bank, not by virtue of any positive law, but under the equitable doctrine of estoppel by negligence.

Article 6823, R. S., provides:

"*What May be Recorded.*—The following instruments of writing, which shall have been acknowledged or proved according to law, are authorized to be recorded, viz.: All deeds, mortgages, conveyances, deeds of trusts, bonds for title, covenants, defeasances or other instruments of writing concerning any lands or tenements, or goods and chattels, or movable property of any description."

Article 6824, R. S., provides:

"All bargains, sales and other conveyances whatever, of any land, tenements and heredita-ments, whether they may be made for, passing any estate of freehold of inheritance or for a term of years; and deeds of settlement upon marriage, whether land, money or other personal thing; and all deeds of trust and mortgages shall bo void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk to be recorded as required by law; but the same as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof or without valuable consideration, shall nevertheless be valid and binding."

[1] In so far as the deed from Houston to Waltz recited and retained a lien upon the land to secure the note, and in so far as the note itself recited that it was given in part payment for the land, describing it, and expressed a lien upon the land to secure its payment, the deed and the note were each substantially a mortgage upon the land, as mortgages are regarded in this state, that is, a security for the debt and entitled to registration. Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54, and the cases referred to. The deed from Houston to Waltz was duly recorded; the note itself was neither acknowledged nor recorded; the transfer or assignment of the vendor's lien from Houston to the bank was not recorded. Appellants had no notice, either actual or constructive, of the transfer of the note or the assignment of the lien by Houston to the bank, nor of any of the extensions of time for the payment of the note.

[2, 3] The first question presented is: Was the record of the deed from Houston to Waltz, the deed reciting the note and expressing and retaining a lien on the land, sufficient notice of the lien to subsequent attaching creditors of Houston?

It is true that the note was made payable to Houston, and it is true also that subsequent to the execution and sale of the note to the bank and his assignment to the bank of the lien Houston again became the owner of the land, though that deed was never placed of record; but does that fact have the effect as to appellants to reinvest in Houston the title to the land free of the lien expressed in his deed to Waltz, neither the deed nor any writing of record reciting a discharge of the lien?

Counsel in their brief and in argument discuss many cases holding that the assignment of the lien from Houston to the bank, and the note itself as a mortgage, is subject to registration, and that, on a failure of the bank to record either the assignment or note, creditors of Houston and subsequent purchasers of the 57 acres for value, without actual notice, would take without notice. But the cases discussed, it seems to us, decide the question against appellants' contention, i. e., the effect of the Houston-Waltz deed as notice to creditors. If the record of the deed from Houston to Waltz gave notice to the world of the existence of the note and the lien to secure its payment, as it evidently does, we see no reason why appellants would

not have all the notice necessary to be given of the outstanding lien through the record of the Houston-Waltz deed, at least up to the time the note was not barred by the statute of limitation of four years. It could hardly be said that the bare failure to record the assignment of the lien destroyed the notice of the lien given by the record of the deeds from Houston to Waltz. The purpose of article 6824, supra, as far as the lien is concerned, was to require registration of the deed to give notice to the world of the existence of the lien and preserve to the bank its equity of redemption. Its registration had that immediate effect. In order to render ineffectual the notice thus given something must take place to destroy or counteract the notice given by the registry of the deed. In Moran v. Wheeler, supra, it was not questioned that the record of the deed from Kensing to Wheeler reciting the notes and retaining the lien on the land, duly recorded, was not sufficient notice of the lien, but in that case Kensing, to whom the notes were made payable, as recited in the deed, and who, from the record appeared to be the adverse claimant of the lien, executed and delivered to Wheeler, the vendee in the deed, an instrument in writing acknowledging the payment of the notes, and released on the record the lien on the land described in the deed. So far as the record then showed, in the absence of notice of the assignment of the lien or transfer of the note, Kensing was the adverse claimant of the lien, and the lien was released. The release of the lien by one appearing from the record to have the lien destroyed the notice given by the record of the deed. As said in the Moran v. Wheeler Case, the law of notice was the controlling rule for determining the rights of the parties. In this case there is nothing of record to show a release of the lien as in the Moran v. Wheeler Case. The simple fact that Houston again became the owner of the land from Waltz and Houston's notice of his ownership to the bank, the then owner of the note and assignees of Houston of the lien, did not, in our opinion, have the effect at that time and by that act alone to destroy the lien or the notice of the bank's ownership of the lien as to appellants. The case of Henderson v. Pilgrim, 22 Tex. 464, is based upon the record disclosing a proper release of the outstanding lien, whether a mortgage lien or a vendor's lien, by the party shown in the record to be the owner or holder of the lien. Article 6824, supra, does not denounce as a penalty for the failure to record the assignment of the lien from Houston to the bank a forfeiture of its lien. The failure to record the assignment did subject it to the danger or possibility of Houston, the ostensible owner of the note as shown by the record, executing and recording a release, as in the cases above referred to, in which event creditors or purchasers then dealing with reference to the land upon the record title would acquire superior rights to that of the bank. We think we need not discuss the question as to whether appellants or either of them under the facts of this case were purchasers for a valuable consideration and without notice of the 57 acres of land. Appellants disclaim that their rights arise by reason of being subsequent purchasers for value, but claim under the creditor feature of the statute supra.

There is, however, this second question presented by the record. The note held by the bank became due on the 20th day of June, 1908, and, by indorsements on the note, the due date of the note was extended to nearly two years after the deed record showed the note to be barred. The record showed no extension or renewal of the note. Appellants had no actual notice of the extensions or renewals of the note. Appellants' attachments are levied in February, and March, 1914. Houston had continued to remain in possession of the land, and the proof showed that he had recovered from Waltz the legal title, but had not placed it of record. Under this state of facts the question is presented: Was the record of the Houston-Waltz deed then notice to appellants of the bank's lien? In Rogers v. Houston, 94 Tex. 403, 60 S. W. 869, a somewhat similar question is presented. A full statement of the case is made by the Court of Civil Appeals in 60 S. W. 445. Dailey conveyed to Brown 40 acres of land reserving a vendor's lien to secure the payment of a purchase-money negotiable note for $67.20. Brown conveyed the land to Davis, who assumed the payment of the note, and in addition gave his note to Brown for $180 as the consideration, the deed so reciting and reserving the lien. Brown's $67.20 was assigned to Armstrong, who brought suit on it, and also upon the second promise to pay it made in the second deed against Davis and Brown, seeking also a foreclosure of the lien to satisfy the $67.20 note, but made no mention of the $180 note. When that suit was brought the $180 note given by Davis to Brown, which was negotiable, had been assigned to Young and by Young to Houston, but in the suit neither Houston nor Young were made parties, nor did they have notice until after judgment foreclosing the lien and sale to Rogers. Houston then brought suit on the $180 note against Davis as maker, Young as indorser, with foreclosure of his lien as against Rogers, and as to Rogers offered to redeem and do equity. Houston recovered judgment, but, because Rogers was required to submit to the right of redemption interposed by Houston and Young, he appealed. Both of the deeds expressing the liens were recorded, but no transfer of the lien created by the second deed, though made, was ever recorded, and it was not shown that Armstrong or Rogers had actual notice of the transfer before the purchase at the foreclosure sale, and no mention was made in the foreclosure suit of the $180

note. On the certified question as to whether the burden rested on Rogers to prove that he did not have actual knowledge that Brown had transferred the $180 note given to him by Davis, and which was described in the recorded deed from Brown to Davis, the Supreme Court said:

"Looking alone to the record, Rogers was justified in concluding that the note, which was past due, had been paid, or that Brown did not desire to assert his subsequent lien upon the land. If Brown had in fact owned the notes at the time the judgment was rendered foreclosing the lien of Armstrong upon the land, that judgment would have barred any right of redemption that Brown had, and the sale under it would be conclusive of all his rights."

In this case the fact is made clear by Edrington, the cashier of the bank, and who had had the matter in hand for the bank and negotiated the transactions with Houston for the bank, that after Houston regained the title to the 57 acres from Waltz, the bank no longer looked to Waltz on the note, and by agreement alone with Houston and Weadington, a subsequent indorser of the note, advanced the due date of the note to such time that the record shows the note was not only long past due, but was barred by the four-year statute of limitation. In this case, as in the Rogers-Houston Case, the right of the bank is in its nature subordinate to the legal title. It seems to us that from the failure of the bank to record its transfer of the lien, its failure to give record notice of the extension of the time of the payment of the note, and the want of actual notice of the bank's ownership of the note, the record showing that Houston owned it, it, appellants could well presume that the note had been discharged, or that the owner of the note did not desire to assert the lien. In other words, the bank cannot now assert against the appellants, the present owners of the legal title, a lien which the record shows was barred at the times of the attachment levies; the appellants having no actual notice or knowledge of the extension of the due date of the note. Articles 5694 and 5695, R. S. 1911, as amended by chapter 123, Gen. Laws 33d Leg. p. 250 (Vernon's Sayles Ann. Civ. St. 1914, arts. 5694, 5695).

We have not considered the brief filed by Weadington, since he is not a party to this appeal; the majority of this court holding it to be a rule of appellate practice that under such circumstances his suggestion of fundamental error should not be considered. McKenzie v. Irrigation Co., 166 S. W. 497; Needham v. Cooney, 173 S. W. 979.

We think we need not discuss the other assignments.

For reasons stated, the judgment of the trial court is reversed, and here rendered for appellants.

HIGGINS, J. I concur in the result.

## On Rehearing.

WALTHALL, J. J. F. Weadington complains of that portion of the opinion in which we say:

"Weadington is not a party to the appeal and filed no cross-action or assignment, but filed a brief suggesting fundamental error in rendering judgment against him on the ground that there is no pleading to support the judgment"

—and to the portion of the opinion in which this court held:

"We have not considered the brief filed by Weadington, since he is not a party to this appeal; the majority of this court holding it to be a rule of appellate practice that under such circumstances his suggestion of fundamental error should not be considered."

We are still of the opinion that Weadington, not having perfected an appeal rendered against him, must be considered by this court as being content with the judgment rendered, and could not claim a reversal in his behalf on the appeal made by the Bank. Sullivan et ux. v. Doyle, 194 S. W. 136, an opinion by the Supreme Court. We overrule his motion for rehearing.

Appellee Traders' National Bank suggests in its motion for rehearing that we are in error in the twelfth finding of fact, in which we say:

"The record showed the note held by the bank to be barred by the statute of limitation of four years."

The latter portion of the statement in the twelfth finding of fact is not well worded, and on that account is subject to some criticism. We meant to refer to the deed records, and not to the record of the case as presented here. The deed record showed the vendor's lien note to be due on the 20th day of June, 1908, and showed no extension of its due date, transfer or assignment of the note or of the superior vendor's lien. The record as presented here does not clearly show the date of the filing of appellee's original petition, but it evidently was not filed earlier than June 27, 1914. We should have made no reference to amended articles 5694 and 5695, as they have no bearing on the question presented here, and we withdraw from the opinion any reference to those articles of the statute.

The case is affirmed as to all parties except as to appellants, Mrs. Anna H. Price and T. P. Day and wife, Mrs. E. M. Day, and as to them the case is reversed, and here rendered that appellee take nothing as to Mrs. Anna H. Price and T. P. Day and wife, and that appellants, Mrs. Anna H. Price and T. P. Day and wife, recover on their cross-action the title and possession of the 57 acres of land sued for, free from all claim of appellee Traders' National Bank and the other defendants in the suit. In other respects the motion for rehearing is overruled.