**WOOD v. SPARKS et al.**

No. 1656—6116.

Commission of Appeals of Texas, Section A.

April 19, 1933.

W. L. Eason, of Waco, for plaintiff in error.

Allen V. McDonnell, of Waco, for defendants in error.

CRITZ, Judge.

This suit was instituted in the district court of McLennan county, Tex., by N. Wood against Texas Mortgage & Investment Company, T. E. Hubby, W. P. Sparks, and others. The real controversy ·is between Wood and Hubby. The case was tried in .the district court without a jury and resulted in a judgment for Hubby against the plaintiff Wood and all other defendants for a foreclosure of a mechanic's lien on certain real property in McLennan county, Tex. No personal judgment was rendered, but only a· judgment in rem against the real property.. The sale of the property under order of sale exhausts Hubby's right to collect the judgment. On appeal by Wood, this judgment was affirmed by the Court of Civil Appeals. 42 S.W.(2d) 142, 144. Wood brings error.

The pertinent facts are undisputed. We are therefore presented with a· mere question of law. It is shown by the record that the Texas Mortgage & Investment Company, whom we will hereafter designate the mortgage company, the then owner of the real property here involved, entered into a written mechanic's lien contract with W. P. Sparks, whereby Sparks agreed to erect on the real property in question certain improvements described in the contract. The consideration for such improvements as provided in the contract was for $4,000. The lien contract secured this sum with interest, etc. The lien contract also contained the following express provision: "In any event, the Texas Mortgage & Investment Company shall not be held liable on said note secured hereby, or any renewal thereof; but as far as said company is concerned the payee, or his assigns, agree to look only to the property described herein for payment thereof."

At the same time the lien contract was executed and delivered, and as a part of the same transaction, the mortgage company executed and delivered to Sparks an instrument

in writing called in the lien contract a "promissory note." This instrument is in ordinary form of a note, but as a part thereof contains the following provision or stipulation: "This note is given in payment for the construction of certain improvements upon that certain lot or parcel of land situated in McLennan County, Texas, being all that certain lot, tract, piece or parcel of land situated in the County of McLennan, State of Texas, being known and designated as Lot No. 1, Block 30, of Huaco Heights an addition to the City of Waco, McLennan County, Texas. to which reference is here made. The liability on and payment of this note is subject in all things to the terms of mechanic's and material man's lien contract between the parties hereto of even date, to which reference is made as a part hereof, this day contracted to be erected by W. P. Sparks for Texas Mortgage & Investment Company, a joint stock assn., and to secure the payment thereof, an express contract and Mechanic's Lien is given by said contract upon said lands and improvements."

The record shows that the above contract and "promissory note" were executed on March 4, 1929. It is also shown that on April 9, 1929, Sparks conveyed and assigned both the lien contract and the "promissory note" to Davis Lumber Company. On April 11, 1929, the original lien contract and the assignment from Sparks to Davis Lumber Company were duly filed for record in the office of the county clerk.

On the same day the above instruments were filed for record, the Davis Lumber Company, by written instrument in due form, transferred and assigned the above mechanic's lien and "promissory note" to Wood. This assignment was in due form and transferred, assigned, and conveyed to Wood the lien contract and "promissory note." This assignment was also filed for record on April 11, 1929. At the time the assignment was delivered by Davis Lumber Company to Wood, they also purported to deliver to him the "promissory note," but in fact delivered to him a forged instrument in its place. The forged instrument was like the original instrument in form. The lumber company actually retained in its own possession the real instrument. Of course, Wood did not know this, but in good faith believed he was getting the true instrument.

After the above transactions and after the original mechanic's lien contract, the transfer thereof from Sparks to Davis Lumber Company, and the transfer from Davis Lumber Company to Wood, had been duly recorded at the proper place in the office of the county clerk of McLennan county, Tex., and at a time when Hubby had full record notice of all such instruments and their contents, the Davis Lumber Company on June 11, 1929, executed and delivered to Hubby a written assignment of the above mechanic's lien and "promissory note," and at the same time indorsed and delivered to Hubby the true note. This assignment was duly recorded on October 15, 1929. We take it that both Wood and Hubby paid a valuable consideration, and both acted in good faith.

It is also presumed from the record that Wood made no investigation at the time he bought the lien and "promissory note" to ascertain if the instrument delivered to him and purporting to be the true instrument was in fact the true instrument; but nothing occurred to excite his suspicion, and he took it in good faith believing it to be the true instrument.

As above shown, at the time Hubby had his transaction with Davis Lumber Company he had full record notice of the fact that Wood had purchased the lien and "promissory note," but no actual notice thereof. Hubby was familiar with the signature of the maker of the "promissory note," and at the time he purchased it he examined it for the purpose of satisfying himself that it was genuine. On finding that it was genuine he accepted it.

■ It is evident from the statement we have made that the instrument designated above as a "promissory note" was not a promissory note at all within the meaning of our Negotiable Instruments Statutes (Rev. St. 1925, art. 5932 et seq.). It is further plainly evident that it was not a negotiable instrument at all, but simply and purely a part of a mechanic's lien contract. The legal effect of the lien contract and instrument designated as a "promissory note" was simply and purely to create a lien for $4,000 against the property in question. No one was personally obligated to pay this lien: in case of default the holder simply had an action in rem against the property. These matters are all fully evident on the face of the lien and "promissory note."

■ We think that it can hardly be controverted that when the Davis Lumber Company executed and delivered to Wood the written transfer and conveyance of the mechanic's lien contract, and at the same time delivered to him the forged "promissory note," as between the lumber company and Wood, Wood took and acquired all the rights and titles the lumber company had in the instruments executed by the mortgage company to Sparks and all the liens, rights, and titles the lumber company had in the land by virtue of such instruments. This was the condition of affairs when Hubby came on the scene.

■■ It is the settled law of this state that when a lien is taken on land to secure a negotiable promissory note, the note itself is a negotiable instrument, and can be transferred and treated as such, but the negoti-

able quality of the note does not govern as to the lien securing it. On the other hand, it is a settled rule of this state that the law of notice controls for the purpose of determining the rights of the parties as regards the lien. Henderson v. Pilgrim, 22 Tex. 464; Moran v. Wheeler et al., 87 Tex. 179, 27 S. W. 54; Rogers v. Houston, 94 Tex. 403, 60 S. W. 869; Lewis v. Ross, 95 Tex. 358, 67 S. W. 405; Pope v. Beauchamp (Tex. Com. App.) 206 S. W. 928.

■ Under the above rule, where a note negotiable in form is secured by a lien on land, an innocent purchaser thereof is protected as such in so far as the personal obligation to pay the debt evidenced by the note is concerned, but in so far as the lien is concerned, such purchaser is charged in law with notice of duly recorded instruments. This is clearly the rule announced by our Supreme Court and the Commission in the above cited authorities.

In Moran v. Wheeler, supra, it is shown that one Kensing conveyed to one Wheeler two tracts of land. The deed recited the execution by Wheeler to Kensing of two promissory vendors' lien notes. This deed was duly recorded. One of the above notes was indorsed and delivered to one Myer for value, and Myer for value indorsed and delivered it to Moran. Both indorsements were before maturity. It seems that no written transfer was given; at least none was recorded. Kensing then gave to Wheeler, without the knowledge or consent of Moran, an instrument in writing acknowledging the payment of the above two notes, including the one he had already transferred, and releasing the land in the deed and notes from the vendor's lien. After these events, the Land Mortgage Company loaned Wheeler $25,000 secured by a lien on the land. The Land Mortgage Company had no notice except what appeared of record. Under such a record, our Supreme Court, speaking through Judge Brown, reviewed the authorities at great length and held that the Land Mortgage Company's lien was superior to the vendor's lien notes held by Moran. This holding was based upon the rule above announced by us. We quote the following from the opinion: "The note sued upon is negotiable, which, in the hands of the plaintiff, was not subject to any equities existing between Kensing and Wheeler. But this does not protect it against equities arising in favor of subsequent purchasers without notice, for a valuable consideration. For example, if the note had been in the form that it is, but there was no recital in the deed as to the purchase money being paid, the plaintiff's rights against Wheeler to enforce the lien would have been the same; but in that case, if another person purchased the land or took a mortgage for it for valuable consideration, without notice, the lien could not

be enforced as against such subsequent purchaser. Hence its negotiable quality does not govern as to the lien, but the law of notice becomes the controlling rule for determining the rights of the parties. It therefore becomes important to inquire what is the law of notice as applied in this case."

After announcing the law above, Judge Brown proceeds to discuss the earlier case of Henderson v. Pilgrim, supra. We here quote that discussion: "In Henderson v. Pilgrim, 22 Tex. 464, one Means and his wife conveyed land to another Means, a brother. Notes were given for the purchase money, and a mortgage and deed of trust were executed to secure their payment. The notes were negotiable, and the vendor transferred them and the mortgage to a third party, giving a written assignment of the mortgage. Subsequently the vendor (the mortgagee) released the mortgage and trust deed, declaring that the notes had been paid. Pilgrim and Stewart bought the land from the mortgagor, after the release of the mortgage, and paid a valuable consideration, having no notice of the assignment of the mortgage or transfer of the notes. It was held that the purchasers took a title as against the assignee of the mortgage because it was not recorded, the assignment being held to be an instrument authorized to be recorded under our statute. The opinion is well sustained by authorities, of which we cite Smyth v. Ins. Co., 84 N. Y. 589; Philips v. Bank, 18 Pa. 394, 399; Ogle v. Turpin, 102 Ill. 148; Bowling v. Cook, 39 Iowa, 200; Ladd v. Campbell, 56 Vt. 529; and Welch v. Priest, 8 Allen [Mass.] 165. Some states have held a contrary doctrine, but generally the decisions are based upon the fact that the laws of those states do not authorize the recording of such assignments. Dixon v. Hunter, 57 Ind. 278; Watson v. Dundee Mortg. & T. Inv. Co., 12 Or. 474, 8 P. 548."

The other cases above cited clearly support the rule we have announced.

■ When we apply the above rule of law to the facts of the case at bar, there is no escape from the conclusion that Wood's title to the lien in question is superior to the title here asserted by Hubby. It is evident that the instruments including the lien contract proper and the instrument designated as a "promissory note" created and evidenced nothing but a bare lien against the real property therein included. These facts clearly appeared upon the face of both instruments. There was no personal obligation created at all. It follows that the Davis Lumber Company had nothing to convey to either Wood or Hubby but a bare lien or claim in rem against the land. At the time Hubby purchased this lien he had full record notice that it had already been transferred and conveyed to Wood. In other words, he had full record notice that the Davis Lumber Company had

already conveyed away the only thing they ever had to transfer. An examination of the record would have fully apprised him of all these facts. If the lien had been released at the time Hubby purchased it, under the circumstances he did, there could be no question but that he would have been charged with notice of such release. We can see no reason why the same rule would not apply to a conveyance of the lien that applies to its release. Both instances involve the same rule of notice.

The Court of Civil Appeals announces the following rule: "However, the mere fact that the instrument was nonnegotiable in the sense that a purchaser of negotiable paper who buys for a valuable consideration without notice, takes the same free of equities in favor of the maker, does not mitigate against an assignment of the obligation evidenced thereby by indorsement and delivery of the instrument. Whether it be denominated a note or not, it was the primary obligation to pay and was the evidence of the debt. The fact that it was made payable to W. P. Sparks or order, evidences the intention of the parties that title thereto should pass by indorsement and delivery of the instrument, and such was the effect thereof. Revised Statutes, art. 5934, § 30. An assignee of a nonnegotiable or overdue note may acquire a good title thereto by the indorsement and delivery of the note, although he takes the same subject to the equities of the maker thereof. Sands v. Curfman (Tex. Civ. App.) 177 S. W. 161; 8 C. J. 56; Buckley v. Collins, 119 Ark. 231, 177 S. W. 920; Gidden Motor Co. v. Johnston, 155 Miss. 328, 124 So. 367."

We find no fault with the above rule in a proper case, and of course the statutory provision mentioned is valid. Furthermore, we hold that as between the Davis Lumber Company and Hubby the mere transfer of the purported "promissory note" would have transferred the lien. What we hold is that neither the rule announced by the Court of Civil Appeals, absent the statute, nor the statute, can have application to defeat the rights of Wood. This is because Hubby bought nothing but a lien at a time when he had full constructive notice that the lumber company had already parted with its title thereto.

We recommend that the judgments of the district court and Court of Civil Appeals be both reversed and judgment here rendered for N. Wood.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for plaintiff in error, as recommended by the Commission of Appeals.