## McCARTY v. ALLEN et al.

No. 8545.

Court of Civil Appeals of Texas. Austin.

Feb. 9, 1938.

Herman A. Knopp and Hill & Uhl, all of San Antonio, for appellant.

N. T. Stubbs, of Johnson City, and Alvin P. Mueller, of Seguin, for appellees.

BAUGH, Justice.

Appeal is from a judgment in a trial to the court without a jury, adverse to appellant. The only issue involved is whether or not appellant had a valid lien on lands in Travis county, securing the payment of three vendor's lien notes for $500 each, executed by W. T. Allen on July 6, 1927, due on or before 5, 6, and 7 years, respectively, after date, as part payment for said lands, and payable to Wimer-Richardson Company, a corporation, grantor in the deed to Allen.

The material facts pertinent to the issues raised are substantially as follows: On July 6, 1927, Wimer-Richardson Company, hereinafter designated as the corporation, sold and conveyed said lands to W. T. Allen, who executed in part payment therefor seven notes for a total of $3,500, each for $500, payable on or before 1 to 7 years after date. Allen also executed a deed of trust on said lands to secure their payment. On July 14, 1927, the corporation indorsed in blank and delivered to W. D. McCarty, acting under a general power of attorney for his son, Orin P. McCarty, notes 5, 6, and 7, here involved, and at the same time executed a guarantee in writing, guaranteeing to Orin P. McCarty the payment of these notes, all of which were delivered to W. D. McCarty as his agent. No written assignment of the notes and lien was ever executed by the corporation, the record owner and holder thereof; nor was the guarantee ever recorded.

On July 23, 1927, Allen sold and conveyed the land to B. Pauline Bengston, who assumed the payment of these notes. On February 28, 1928, B. Pauline Bengston conveyed the land to H. B. West, who assumed payment of these notes. On October 9, 1929, Mrs. Etta West, community survivor of H. B. West, then deceased, sold and conveyed the land to N. J. Wonsley and wife, for a recited consideration of $7,000, $3,500 in cash and a vendor's lien note for $3,500, payable to Mrs. West, which she, on the same date, assigned and transferred to R. C. Appling. Wonsley, however, did not on October 9, 1929, pay the full cash consideration recited, but withheld part of same, and he and Appling on the next day went to San Antonio to the offices of the corporation to pay off these outstanding notes. The officers of the corporation informed them that it owned these notes, but that they were in the possession of its president, who was then out of the city, had them locked up, and it could not then deliver the notes, but would mail them to Wonsley later. Thereupon, Wonsley paid the corporation the amount of these notes, took its receipt for the amount paid, and the corporation, reciting itself to be the owner, executed a release of these notes and lien, which Wonsley placed of record in Travis county.

The corporation deposited these proceeds to its credit in the Alamo National Bank. On October 22, 1929, the corporation was placed in the hands of a receiver, and the Alamo National Bank applied to the payment of the corporation's debt to it, the funds paid to the corporation by Wonsley. It is not controverted that the corporation had, over a period of years, been selling to W. D. McCarty, both for himself and for his son, appellant herein, who lived in Massachusetts, and who left such matters entirely to his father, vendor's lien notes, guaranteeing their payment, collecting for them both principal and interest, and remitting the proceeds to W. D. McCarty.

Appellees, Wonsley, and the heirs of R. C. Appling, who owned the note purchased by him from Mrs. West, defended on the

ground that they were innocent purchasers under the registration statutes; that McCarty ratified the acts of the corporation in collecting said moneys; and on the ground that, under the facts, appellant was estopped to assert any lien, even if it was otherwise valid.

No personal liability on the notes is asserted against Wonsley or Mrs. West, his vendor. The only issue presented on this appeal is the validity as against them of the alleged lien. The appellant makes three contentions in this regard: First, that appellees herein were not innocent purchasers under the registration statutes; second, that Wonsley and Appling were negligent in paying off these notes to the corporation without requiring the production and surrender of the notes; and, third, that they failed to show by competent evidence that the corporation was the authorized agent of appellant to collect said notes.

Regardless of the question of ratification by McCarty of the acts of the corporation in collecting these notes, we have concluded that the trial court's judgment should be affirmed on the ground that Wonsley is protected, under the registration statutes, Vernon's Ann.Civ.St. art. 6591, et seq., as an innocent purchaser for value without notice of appellant's asserted lien on said lands; or, if we be in error in this regard, that appellant is estopped, under the undisputed facts and circumstances, to assert such lien, if any he has, against Wonsley.

Prior to 1925, W. D. McCarty was guardian of the estate of his minor son, appellant herein. During that year, the son's disabilities as a minor were removed by a judgment of the district court, and said Orin P. McCarty thereupon executed to his father a general power of attorney, giving to him practically unlimited authority to deal with his estate. During the succeeding four years the funds of the father and son appear to have been commingled and to have been handled by the father as his own, many purchases of vendor's lien notes made from the corporation under its guaranty of payment, their account kept on the books of the corporation in the name of W. D. McCarty only, and remittances of collections by the corporation made to him only. The son lived in Massachusetts and appears to have left all of these matters entirely to his father. This course of conduct appears to have continued up to and including the trial hereof, as appellant himself did not appear nor testify by deposition in this case, and the father appears to have employed counsel and to have looked after the litigation. Under these facts and circumstances, therefore, whatever was done by W. D. McCarty, and whatever notice or information was imparted to W. D. McCarty, will be considered as given to Orin P. McCarty and binding upon him; he having left all of these matters entirely to his father.

There is no contention made that either Wonsley or Mrs. West, his vendor, are personally liable on the notes involved. If Mrs. West had herself paid off these notes to the corporation, the record owner and holder thereof, had secured from it a release of the lien in question, and had placed same of record, or had delivered it to Wonsley at the time she conveyed him the land in question, there could be no doubt that Wonsley would be protected as an innocent bona fide purchaser under the registration statutes. Moran v. Wheeler, 87 Tex. 179, 27 S.W. 54, 55; Wood v. Sparks, Tex.Com. App., 59 S.W.2d 361, 362; Ragan v. Day, Tex.Civ.App., 94 S.W.2d 1207, writ refused; 36 Tex.Jur., § 47, p. 471; § 82, p. 548. Can Wonsley, under the above-stated facts, now claim the same protection? Wonsley was fraudulently misled by the corporation as to who had possession of the notes; but under the facts and circumstances we think the trial court was clearly authorized to find that he was not negligent in failing to obtain possession of the notes themselves. He had not assumed their payment, and was not bound to pay them as his personal obligation. The matter of paramount concern to him was the release of the vendor's lien. While the notes themselves were negotiable instruments and subject to an unrecorded assignment, it is now settled, as stated by Judge Critz in Wood v. Sparks, supra, "the negotiable quality of the note does not govern as to the lien securing it. On the other hand, it is a settled rule of this state that the *law of notice* controls for the purpose of determining the rights of the parties as regards the lien." (Italics ours.) See, also, Moran v. Wheeler, supra. The lien could have been released without the payment of the debt it secured.

Nor is appellant in position to assert negligence against Wonsley in not securing possession of the notes before or at the time he paid them. He went to the record owner, the corporation, and was assured by it that it still owned them. As asked by Judge Brown in Moran v. Wheeler, "What

limit would be placed to the scope of a search?" if he be compelled to go beyond the record. If it be conceded that a fraud was perpetrated by the corporation upon one of two innocent parties in releasing said lien, upon whom should the burden fall? Manifestly, upon the one who, by his own conduct or neglect to protect himself, first made the perpetration of such fraud upon an unsuspecting victim possible. We think the language of Judge Brown in Moran v. Wheeler, which rule has been consistently followed since, is here applicable and controlling: "It was within the power of the plaintiff to have taken a written assignment of the vendor's lien, and to have placed it upon record, as the law required, and thus to have secured himself against the acts of the original owner of the lien. The Land & Mortgage Company had no such opportunity for guarding against the wrong; and it must be held that he who neglects the performance of a duty enjoined, or the exercise of a privilege granted for his security, must suffer the loss, rather than one who was not in position to secure that protection."

See, also, Ragan v. Day, supra; Pustejovsky v. K. J. Z. T. Lodge, 124 Tex. 504, 79 S.W.2d 1084; 36 Tex.Jur., § 81, p. 545.

But if we be mistaken in our conclusion that Wonsley was an innocent purchaser for value without notice, under the registration laws, as to the lien here involved, we are clear in the view that under the record presented McCarty was estopped by the conduct of his father, attributable to him, to assert such lien against Wonsley.

Wonsley paid to the corporation the amount of said notes in full on October 10, 1929, secured a release of his lien and placed it of record. The books of the corporation so showed. The corporation deposited these funds in its name in the Alamo National Bank on the same date. The corporation was placed in the hands of a receiver on October 22, 1929, and on March 12, 1930, was adjudged a bankrupt. Whether the bankruptcy proceedings had been closed at the time this suit was filed is not shown. The Alamo National Bank applied these funds manifestly forthwith after such deposit, to the discharge of the corporation's debt to it. W. D. McCarty admitted that he knew of these proceedings within two months after the receivership and prior to January 1, 1930; and that he discussed these matters with his attorney. Manifestly, he knew therefore, shortly after it occurred, that the corporation, purporting at least, if not with actual authority, to act as his agent, had collected these notes and released said lien. Notice of these facts was therefore imputed to his son, appellant herein. Yet he did not repudiate such action, did not notify Wonsley nor any of his predecessors in title that he held such notes for his son, nor did he assert the validity of his lien. On the contrary, he waited, according to the statement in appellant's brief (the original petition is not shown in the transcript), until October 7, 1933, or three day short of four years after said transaction to file suit on said notes. Citation in this suit was the first notice Wonsley or Appling had that the notes had not been paid to the owner thereof. Manifestly, the bank had no notice that these funds belonged to appellant. Nor was it shown that McCarty took any steps to recover same, as belonging to him, from the bank. Had he done so seasonably, he might have protected himself against loss. On his right to have done so under the circumstances, however, we express no opinion. That question is not presented. McCarty, however, with full knowledge of the unauthorized or fraudulent act of the corporation, if such it was, purporting to act for him in collecting said notes, should not be permitted to remain silent, so far as appellees were concerned, when he should have spoken, for approximately four years thereafter, during which time the opportunity of Wonsley to protect himself by seeking to recover what he had paid, or to have same properly applied, was seriously jeopardized if not entirely lost, and now be heard to assert the validity of his lien. Manifestly, McCarty knew as far back as 1929 of the acts of the corporation which, unless prompt action be taken, must result in a loss either to him or to the purchaser of said land; whereas, Wonsley did not, nor was he put upon notice that such would be the result. The law imposed upon McCarty the duty to repudiate, with reasonable promptness, the unauthorized act of the corporation. This he did not do until approximately four years afterward. Having remained silent, so far as appellees were concerned, for so long, when he should have spoken, equity should not now permit McCarty to pass on his loss to those acting in good faith, and in ignorance of the facts so long known to him. Burnett v. Atteberry, 105 Tex. 119, 129, 145 S.W. 582; Wm. Cameron & Co. v. Gibson, Tex.Civ.App., 278 S.W. 522; 17 Tex.Jur., § 13, p. 142.

978

Nor does the fact that the trial court rendered judgment in favor of appellant against Allen, the original maker of said notes, and against Miss Bengston, the first to assume payment of same, in any manner affect the conclusions above announced. Judgment against them was by default. No personal judgment was sought against appellees herein, and the only issue as to them was the validity of the claimed lien on the land. As to this the trial court's judgment was correct and will therefore be affirmed.

Affirmed.